IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHARLES LAFAYETTE
MCGEE                                                                               PLAINTIFF

VS.                                                       CIVIL ACTION NO. 3:16-cv-955-FKB

M.P.C.P. UNKNOWN
PENNINGTON, et al                                                                 DEFENDANTS

## ORDER

This case is before the Court on the Motion for Summary Judgment [50] filed by Defendant Global Enterprises & Outsourcing ("GEO Group"), as well as Plaintiff's motions for a hearing [57], [58], [59] and [60]. For the following reasons, the Court finds that GEO Group's motion should be granted, and Plaintiff's motions should be denied.

Plaintiff Charles Lafayette McGee is an inmate in the custody of the Mississippi Department of Corrections ("MDOC"). He is proceeding *pro se* and *in forma pauperis*. McGee originally brought this § 1983 claim against five defendants: GEO, Management & Training Corporation ("MTC"), R. Pennington, M.P.C.P.A. Moore, and Allameda Medical Services. Only the first two of these five defendants were ever served. McGee previously voluntarily dismissed MTC. [42].

### I. Factual Allegations

This case concerns the decision by prison medical personnel to treat McGee using Haldol in 2010 and 2011. In October 2008, McGee was transferred to the GEO Group-operated East Mississippi Correctional Facility ("EMCF"). In March 2010, Defendant Pennington, an employee

1

of Defendant Allameda,[1] evaluated McGee and prescribed him Haldol. [1] at 7, 9. McGee contends that he did not consent to Haldol injections and allowed them only because he believed he was receiving a different medication. *Id.* Throughout 2010, McGee attempted to refuse the Haldol shots, though on some occasions Pennington would inject him anyway. *Id.* Eventually, McGee signed an authorization to receive Haldol injections. *Id.* at 10. However, he claims he did so only "because [he] did not want to get beat to death . . . in prison over a vendetta from years ago." *Id.*[2] In approximately August 2011, McGee claims that Pennington quit his job after he was assaulted by another inmate while attempting to give that inmate an injection. *Id.* In September 2011, another member of the psychiatric staff at EMCF evaluated McGee. *Id.* The staff member asked McGee if he wanted to remain on Haldol, and McGee informed him that he did not. *Id.* McGee stopped receiving Haldol at that time. [43] at 12.

Throughout his pleadings, McGee implies that Pennington prescribed him Haldol as a means of making additional money for his employer, Allameda, and for GEO Group. He begins by alleging that Allameda and GEO Group received additional funding for inmates under psychiatric care. [1] at 6. He contends that Allameda's employees could "change an offender's medical class/psychiatric level of care so they can be prescribed medications . . . ." *Id.* at 7. He alleges that Pennington, knowing that his employer would make additional money if he were to prescribe psychiatric medication, would "look through offenders' medical records for ones classified as psychiatric patients when they came into the system and who were housed at EMCF

---

[1] As discussed *infra*, McGee later amended the name of Defendant "Allameda Medical Services" to "Legrand Elliot, Select Hospital."
[2] McGee does not provide any coherent explanation for why he believed he would be beaten if he refused Haldol. He points only to an example of an inmate who was supposedly assaulted by other inmates after he stopped taking his blood pressure medication. [1] at 10.

2

after he started working there." *Id.* at 7. "He would call them to medical for a consultation even if their [level of care] did not require medications/even if they did not request assistance so he could change their [level of care] to get them on medication so GEO would get the extra money for housing an offender on medication." *Id.*

McGee, however, does not provide any evidence to support his allegation that Pennington did anything improper. Additionally, he provides no evidence to support GEO Group having taken part in this alleged plan or to show that GEO Group had any knowledge of Pennington's alleged improper actions.

The Court held an omnibus hearing on July 2, 2018. McGee testified that Pennington began giving him the Haldol shots in either late 2010 or early 2011. [43] at 10. He stopped receiving Haldol around September 2011. *Id.* at 12.[3]

McGee testified that he began preparing to file this lawsuit once he was transferred to South Mississippi Correctional Institution ("SMCI") in February 2012. [1] at 11; [43] at 11. He contends, however, that "it takes a while for Haldol to get out of your system for you to stabilize." [43] at 11. He explained that he did not file his Complaint until December 12, 2016, because the "legal assistance program at MDOC is not that perfect. It's hard to get cases and stuff or get paperwork to do it with." [43] at 10. When asked why he did not file the case in 2012, McGee testified that he "was trying to get the paperwork to get the stuff done. [He] was trying to get off of Haldol. Takes a while to get it out of your system where you can think straight. . . . It messes your think[ing]

---

[3] McGee claimed in an earlier written filing that his "[l]ast estimated date of [a] Haldol shot taken at [EMCF] was about [the] middle of July 2011." [13] at 1. McGee also testified that medical staff at a different prison, the Walnut Grove Detention Facility, attempted to prescribe him Haldol again in October or November 2014. *Id.* at 14, 15. He alleges that the psychiatric staff member who attempted to do so, Defendant Moore, did so for the same improper reasons as had Pennington. *Id.*

3

pattern up." *Id.* at 11. He claims that the Haldol he was prescribed in 2010 and 2011 continues to affect him to this day. *Id.* at 12.

During the hearing, the Court asked counsel for MTC and for GEO Group whether they were aware of the identifies of Defendants Pennington, Moore, or Allameda. *Id.* at 3-4. Counsel for both informed the Court that they were unfamiliar with any of those three defendants. *Id.* at 4. The Court advised McGee of his responsibility to provide a valid address for Pennington, Moore, and Allameda so that they could be served with process. *Id.* at 5. McGee acknowledged that he understood that he is required to serve those defendants in order to pursue a claim against them. *Id.* On August 27, 2018, McGee filed a motion to amend the name of Defendant Allameda to "Legrand Elliott Select Hospital." [46], [47]. He provided a new address at which to serve Legrand Elliot, Pennington, and Moore. *Id.* On November 20, 2018, the Court entered an order granting the motions to the extent they sought to correct the names and addresses of those defendants. [52]. The Court directed the United States Marshal to serve the defendants at the address McGee had provided. *Id.* However, all three summonses were returned unexecuted, as none of the Defendants could be found at the address McGee provided. [54], [55], and [56]. They remain unserved.

## II. Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th ir.), *cert. denied*, 525 U.S. 1054, (1998)). Issues of fact are material if "resolution of the issues

4

might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*)(emphasis omitted). Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

### III. Analysis

"[T]he test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability." *Flores v. GEO Grp., Inc.*, Civil Action No. 1:09-1198, 2011 WL 1100491, at *3 (W.D. La. Mar. 3, 2011), *report and recommendation adopted*, Civil Action No. 1:09-1198, 2011 WL 1078493 (W.D. La. Mar. 23, 2011)(citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978); *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003)).

> [A] private corporation performing a government function is liable under § 1983 if (1) there is a policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy or custom that caused the claimed injury; (2) the corporation has an official custom or policy which could subject it to § 1983 liability; and (3) the claimant can demonstrate that the corporate action was taken with the requisite degree of culpability, and show a direct causal link between the action and the deprivation of federal rights. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-79, *reh'g en banc denied*, 251 F.3d 159 (5th Cir.), *cert. denied*, 534 U.S. 820 (2001); *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir.2004) (citing *Monell*). Culpability may be shown either through an unconstitutional official policy or through a facially innocuous policy that was implemented with deliberate indifference to a known or obvious consequence that a constitutional violation would result. *See Piotrowski*, 237 F.3d at 579. To establish the causation element, a plaintiff must show that the policy is the "moving force" behind the violation. *Id.* at 580.

*Phillips v. Corr. Corp. of Am.*, Civil Action No. 02-0766, 2006 WL 1308142, at *3 (W.D. La. May 10, 2006).

McGee has not actually alleged any action by GEO Group. Instead, he has alleged that one of GEO Group's employee's, Pennington, prescribed him medication unnecessarily or without his knowledge in an effort to make his employer, Allameda/Legrand Elliot, and GEO Group more money. McGee has not identified a policymaker at GEO Group, nor has he shown how that policymaker had actual or constructive knowledge of a policy or custom that caused his claimed injury. He has not identified an actual policy in place at GEO Group which would subject it to § 1983 liability. Finally, he has not provided any evidence that any action by GEO Group had any direct causal link to Pennington's alleged actions. McGee has failed to allege the existence of the elements necessary for the Court to find that GEO Group is subject to § 1983 liability in the case *sub judice*. Accordingly, the Court finds that GEO Group is entitled to summary judgment in its favor.

Additionally, even if McGee could satisfy the elements necessary to show that GEO Group has corporate/municipal liability, the statute of limitations bars his claim against that defendant. McGee stopped receiving Haldol in September 2011. He testified that he began gathering materials necessary to file this case in 2012. Yet, he did not file it until December 2016. McGee's § 1983 claim against GEO Group is subject to Mississippi's general three-year statute of limitations. *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008). "The statute of limitations begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *McBroom v. Payne*, Civil Action No. 1:06-cv-1222-LG-JMR, 2010 WL 3942010, at *4 (S.D. Miss. Oct. 6, 2010)(quoting *Walker*, 550 F.3d at 414). McGee had

clearly become aware of his alleged injury in 2012 when he testified that he began gathering materials necessary to file this suit. The only allegations McGee makes that take place after September 2011 are against a different defendant, Moore, who was employed by a different employer, MTC. Accordingly, his claim against GEO Group is time-barred.

## IV. Conclusion

The Court finds that GEO Group's Motion for Summary Judgment [50] should be granted. GEO Group is dismissed as a defendant.

The only three remaining defendants, Pennington, Moore, and Legrand Elliot Select Hospital, remain unserved. McGee has filed four motions asking for a hearing "discussing matters concerning the claims" against these defendants. [57], [58], [59], and [60]. In each motion, McGee lists the same address for these defendants that he has provided previously and at which service has already been attempted unsuccessfully. *Compare Id.* to [54], [55], and [56]. When service was previously attempted, the process server was advised that none of these individuals work there. *See* [54], [55], and [56]. The Court hereby sets a deadline of October 18, 2019, for McGee to file a motion for service of process, providing current addresses at which these defendants may be served. Should McGee fail to provide current addresses by the deadline, the Court will dismiss this case pursuant to Fed. R. Civ. P. 4(m).

SO ORDERED, this the 18th day of September, 2019.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE